IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 17, 2008

Charles R. Fulbruge III
Clerk

No. 05-10247

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RONALD GENE HARPER; JIMMIE CLYDE COLLINS,

Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DeMOSS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Defendant-appellant Ronald Gene Harper was convicted by a jury of five conspiracy, drug possession, and weapons offenses. Co-defendant-appellant Jimmie Clyde Collins was convicted by the same jury of six conspiracy, drug possession, and weapons offenses. In this direct criminal appeal, Harper appeals his conviction and sentence, claiming that the district court (1) erred by admitting testimonial hearsay, (2) abused its discretion by excluding the conviction records of a critical state witness, and (3) abused its discretion by refusing to ask requested voir dire questions of the jury. Collins appeals his sentence, claiming the district court (1) erred by using a conviction in this case

as a prior conviction for purposes of sentence enhancement and (2) erred by imposing an unreasonable sentence.  We affirm.

I

Co-defendants-appellants Ronald Gene Harper and Jimmie Clyde Collins lived together at a house in Fort Worth, Texas.  In June 2004, Demea Garrett, a confidential informant working for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), approached the house and asked Harper about purchasing crack cocaine.  Harper told Garrett to return in thirty minutes.  Garrett did not return thirty minutes later, but did return on June 21, 2004, when he purchased 3.52 grams of cocaine base from Collins.  Harper was in the room where the transaction occurred but did not participate in the sale.

Four days later, on June 25, 2004, ATF executed a search warrant at the house.  ATF officers found a surveillance camera on the front porch.  They also found twenty-eight guns in various locations in the house, including four hidden in the living room couch, and over eleven grams of cocaine.  Cocaine was found hidden in the living room couch and in a Pyrex bowl in a microwave oven in the kitchen.  Some of the cocaine was packaged for distribution in plastic baggies.  ATF officers also found digital scales and empty plastic baggies in the house.

Collins and Harper were at the house when ATF executed the search.  They were arrested on traffic warrants but were later released on bond.  After being given Miranda warnings and while still at the house, Harper told an ATF agent that he lived in the "middle room" of the house.  He denied knowledge of the drugs but admitted that his fingerprints would be on the guns because he moved them.  Collins told the same ATF agent that "everything in the house was his," referring to the guns and a small quantity of marijuana.  Importantly, he denied knowledge of the crack cocaine in the microwave.

ATF agents returned to the house a month later on July 26, 2004, to execute federal arrest warrants for Harper and Collins.  Collins answered the

2

door and was arrested. Harper was found sitting on the living room couch and was also arrested. Collins consented to a search, during which agents found two additional firearms (in the couch and a bedroom), crack cocaine (in the couch), heroin (in the couch), and video surveillance equipment. After being read his Miranda rights, Collins told an ATF agent that all the drugs and firearms in the house were his. He admitted that one of the guns was traded to him for cash and crack cocaine.

Harper and Collins (along with a third defendant not involved in this appeal) were indicted in a ten-count Superceding Indictment on October 13, 2004. Harper was named in five counts arising from only the June 25, 2004, search: conspiracy to possess five grams or more of cocaine base with intent to distribute, possession of five grams or more of cocaine base with intent to distribute, using and maintaining premises to manufacture and distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.

Collins was named in six counts arising from both the June 25, 2004 and July 26, 2004 searches, including conspiracy to possess five grams or more of cocaine base with intent to distribute (June 25), possession of five grams or more of cocaine base with intent to distribute (June 25), using and maintaining premises to manufacture and distribute a controlled substance (June 25), possession of a firearm in furtherance of a drug trafficking crime (June 25), possession of a controlled substance with intent to distribute (July 26), and possession of a firearm in furtherance of a drug trafficking crime (July 26).

A jury convicted Harper and Collins of all charges in a joint trial. Collins did not testify at trial, but an ATF officer testified as to Collins's admissions during both searches, over Harper's Sixth Amendment objections. The district court instructed the jury not to consider Collins's statements as evidence against Harper.

The district court sentenced Harper under the Sentencing Guidelines to an aggregate sentence of 138 months of imprisonment and sentenced Collins to an aggregate sentence of 370 months of imprisonment. The court adopted the Presentence Investigation Report's (PSR) recommendation and sentenced Collins to 60 months imprisonment on Count Four (possession of a firearm in furtherance of a drug trafficking crime, June 25) and 300 months imprisonment on Count Ten (possession of a firearm in furtherance of a drug trafficking crime, July 26). Count Four was adopted as a prior conviction, thereby increasing the penalty for Count Ten, which was deemed a second conviction. The district court ordered that the sentences for these two counts be served consecutively.

## II

### A

Harper first challenges the district court's denial of his Sixth Amendment challenge to the admission of Collins's statements at trial, relying on the Supreme Court's recent decision in Crawford v. Washington.[1] Because Harper properly preserved his Sixth Amendment challenge by objecting to Collins's statements, we review the issue de novo, subject to harmless error analysis.[2]

Harper contends that allowing two ATF agents to testify about co-defendant Collins's admissions during their joint trial violated his own rights under the Confrontation Clause of the Sixth Amendment because Collins did not testify at trial, and Harper had no prior opportunity to cross-examine Collins. Harper challenges the admission of ATF agent Blake Gordon's testimony based on Collins's statements to him on July 26, 2004. Gordon testified that:

> Mr. Collins stated that the SIG-Sauer pistol that was found, that he traded it for $200 in cash and $70 worth of crack cocaine to a

---

[1] 541 U.S. 36 (2004).

[2] See United States v. Jimenez, 464 F.3d 555, 558 (5th Cir. 2006).

4

relative of his. In addition he stated that he sold crack cocaine in quantities known as 50s.

Harper also challenges ATF agent Chris Beach's testimony based on Collins's statements to him on June 25, 2004. Beach testified that:

> Mr. Collins told me that he lived at the residence. I explained to him that at the time firearms and narcotics were being found inside the residence . . . . He told me everything in the house was his and specifically that the firearms that he had either purchased them—or he had obtained them either by purchasing them or trading for them. He explained that if there were any narcotics in the house that he smoked marijuana and we'd probably find marijuana inside the house.
>
> I asked him where he stayed inside the residence. He said he usually sleeps in the living room. I asked him about the suspected narcotics—suspected crack cocaine that we found in the microwave. He said he was unaware of that and it was probably his dinner.

Crawford prohibits courts from admitting out-of-court "testimonial" statements unless the declarant is unavailable and the defendant had a prior opportunity to cross-examine the declarant.[3] Although the court did not clearly define the word "testimonial," it made clear that "[s]tatements taken by police officers in the course of interrogations" are examples of testimonial statements.[4] Collins's statements to agent Gordon and agent Beach are "testimonial" and could not be admitted at Harper's trial unless Harper had an opportunity to cross-examine Collins. Because Collins exercised his Fifth Amendment right not to testify, Harper did not have an opportunity to cross-examine him, and the district court erred in admitting the testimony.

The Government argues that Crawford does not apply because the testimony was not offered "against" Harper, but only against Collins. But Crawford makes no such distinction. Although the Sixth Amendment grants a

---

[3] Crawford, 541 U.S. at 59.

[4] Id. at 52.

5

criminal defendant the right "to be confronted with the witnesses against him,"[5] Crawford makes clear that "witnesses against the accused" are simply those who "bear testimony . . . for the purpose of establishing or proving some fact."[6] In this case, Collins's testimonial statements were introduced for the purpose of establishing that Collins owned some of the narcotics and firearms found in the house. Despite the Government's contention that Collins's statements were only introduced against Collins, the statements necessarily constitute the "testimony" with which Crawford is concerned.

Having determined that Harper's Sixth Amendment confrontation right was violated, we turn to the harmless error analysis. "Under the harmless error standard, reversal is required if there is a reasonable possibility that the improperly admitted evidence contributed to the conviction."[7] "For an appellate court to find that a violation of a federal constitutional right is harmless, it must be convinced beyond a reasonable doubt that the error was harmless in light of the other evidence presented at trial."[8] Whether a violation of the Confrontation Clause is harmless in a particular case depends on a host of factors including "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case."[9]

---

[5] U.S. CONST. amend. VI (emphasis added).

[6] Crawford, 541 U.S. at 51.

[7] United States v. Ibarra, 493 F.3d 526, 532 (5th Cir. 2007) (quotation omitted).

[8] United States v. Vejar-Urias, 165 F.3d 337, 340 (5th Cir. 1999).

[9] Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986).

The Government's case against Harper was based primarily on circumstantial evidence. The prosecution specifically relied on the large quantity of guns, surveillance equipment, marijuana, electronic scales, and other equipment used to "cook" crack cocaine that were found during two searches of the residence. At closing argument, the prosecution argued that the overwhelming amount of circumstantial evidence showed that Harper was a willing participant in the conspiracy, as opposed to just someone who stayed at the house in exchange for taking care of the yard work, as Harper had claimed. The Government also relied on the testimony of Garrett, the confidential informant, who testified about his June 21 drug buy, during which Harper stood and watched as the transaction was taking place.

"Mere presence or association alone, however, [is] not sufficient to prove participation in a conspiracy. Likewise, the government may not prove up a conspiracy merely by presenting evidence placing the defendant in a climate of activity that reeks of something foul."[10] Harper's defense is that he was merely present in the house where and when the illicit activity took place. But Collins's statement that he was unaware of the crack cocaine in the microwave suggests that someone other than Collins was involved in cooking the crack in the microwave. This statement necessarily implicates Harper because it suggests that Harper was not merely a resident at the house, but was actively involved in the various drug-related crimes charged in the indictment.

As the Government points out, however, the judge instructed the jury during the trial, and again just prior to its deliberations, that Collins's statements should not be considered in any way as evidence against Harper. Although "juries are presumed to follow their instructions,"[11] Harper

---

[10] United States v. Fuchs, 467 F.3d 889, 908 (5th Cir. 2006) (internal quotations omitted), cert. denied, 127 S.Ct. 1502 (U.S. Mar. 5, 2007).

[11] Richardson v. Marsh, 481 U.S. 200, 211 (1987).

nevertheless relies on Bruton v. United States to argue this case is one where "the risk that the jury will not, or cannot, follow the instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."[12]  In Bruton, a non-testifying co-defendant's statement facially implicated the defendant, and the Court concluded that such prejudice could not be cured by the trial judge's limiting instruction.[13]  But the Court later concluded in Richardson v. Marsh that there was no reason to depart from the general rule that "juries follow their instructions" when the adverse statement "was not incriminating on its face, and became so only when linked with [other] evidence introduced later at trial."[14]

In this case, Collins's statement only implicates Harper if one infers that the crack cocaine found in the microwave belonged to Harper, based on other evidence showing that Harper resided at the house.  In other words, Collins's statement only became incriminating when linked with the other circumstantial evidence of Harper's presence and activity at the house.  Accordingly, "there does not exist the overwhelming probability of [the jury's] inability to" follow the judge's admonition to consider the statement as evidence only against Collins.[15]  The district court's Crawford error was harmless and does not constitute reversible error.

---

[12] Bruton v. United States, 391 U.S. 123, 135 (1968).

[13] Id. at 126.

[14] Richardson, 481 U.S. at 208.

[15] Id.; see also United States v. Santos, 449 F.3d 93, 100 (2d Cir. 2006) (finding Crawford error in the court's admittance of a non-testifying co-defendant's statement, but ultimately finding no error because the statement did not mention the defendant by name, and the district court instructed the jury not to consider the statement as evidence against the defendant).

B

Harper next argues that the district court erred in excluding the written conviction records of a state witness on the basis that they were "repetitious" of the witness's admissions of the convictions during testimony. We review a district court's decision to admit or exclude evidence for abuse of discretion.[16] Even if the district court abused its discretion, this court will not overturn a conviction unless the defendant was prejudiced by the error.[17]

Harper offered certified copies of court records showing the five separate convictions of Garrett, the confidential informant. The court excluded the exhibits on the basis that they were "repetitious" and a "waste of time" because Garrett testified and was cross-examined about his prior convictions.

Two of the exhibits that Harper sought to admit were records of Garrett's convictions for criminal mischief and attempted possession of a controlled substance after violating his deferred adjudication probation by committing theft-by-check. On direct exam, however, Garrett admitted the offenses. Additionally, Collins's attorney cross-examined Garrett about the convictions and why deferred adjudication probation was revoked. Given that Garrett admitted the prior convictions and was available for cross-examination, the district court did not abuse its discretion in excluding the exhibits.[18]

Harper next argues that documentary evidence of Garrett's conviction for the misdemeanor offense of assault by bodily injury involving family violence is admissible to show Garrett's bias, because it showed that he had a pending charge against him at the time of Harper's alleged drug transaction and

---

[16] United States v. Cantu, 167 F.3d 198, 203 (5th Cir. 1999).

[17] United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996).

[18] See United States v. Sockwell, 699 F.2d 213, 217 (5th Cir. 1983) (no error to exclude superfluous documentary evidence where defendant's testimony established the matter); FED. R. EVID. 403.

therefore that he would be motivated to "curry favor with the government." Garrett testified on direct examination that he was convicted in 2004 for the family violence offense, but he indicated on cross-examination that he was not certain of when in 2004 he was actually convicted. Because Garrett also testified that he began working as a confidential informant in either March or April of 2004,[19] his testimony could indicate that his conviction for family violence occurred prior to when he began working as a confidential informant. The arrest record showing that his misdemeanor conviction for family violence occurred on June 30, 2004, nine days after Garrett's June 21 drug buy in this case, could therefore not be dismissed as redundant or duplicative, and the district court abused its discretion in doing so.

The court likewise abused its discretion in refusing to admit the documentary evidence of Garrett's convictions for theft-by-check. Rule 609(a)(2) provides that "evidence that a witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."[20] The two theft-by-check convictions fall under Rule 609(a)(2) because they have as an element "an act of dishonesty or false statement by the witness." Crimes qualifying for admission under Rule 609(a)(2) are not subject to Rule 403 balancing and must be admitted.[21]

Additionally, Garrett did not clearly admit to the theft-by-check convictions, but rather only indicated that he was "possibly" convicted for them. Garrett said that his deferred adjudication probation for the criminal mischief

---

[19] Garrett testified at the October 26, 2004 trial that he had been working as a confidential informant for six or seven months.

[20] FED R. EVID. 609(a)(2) (emphasis added).

[21] See United States v. Toney, 615 F.2d 277, 279-80 (5th Cir. 1980).

10

and attempted possession charges had been revoked for failure to report to his probation officer and/or drug use. The documentary evidence shows that the revocation was due to the theft-by-check offenses. Such evidence also impugns Garrett's credibility. Given Rule 609(a)(2)'s mandate, and the fact that Garrett did not admit to the two convictions (and thus the records would not have been cumulative of the testimony), the district court abused its discretion by not admitting the documentary evidence of Garrett's theft-by-check convictions.

We must determine whether the error was harmless.[22] Harmless error is "[a]ny error, defect, irregularity or variance which does not affect substantial rights."[23] It arises when the mistake fails to prejudice the defendant because it has not "affected the outcome of the district court proceedings."[24]

Harper claims that he was prejudiced because the exhibits "would have been very damaging to the credibility of Garrett" and the Government's case against Harper "depended heavily—perhaps entirely—upon the jury's assessment of Garrett's credibility." But the testimony concerning Garrett's three prior convictions placed his credibility squarely before the jury, and Garrett's testimony established that he had a history of criminal conduct, and that he was a paid informant working for the Government. Although there is a plausible argument that the two theft-by-check convictions speak uniquely to Garrett's ability to testify honestly, Harper does argue that those two convictions would have impeached Garrett's credibility in a manner unique from the other convictions. Because the district court's error did not affect the outcome of the district court proceedings, the error was harmless and reversal is not required.

C

---

[22] See United States v. Bishop, 264 F.3d 535, 546 (5th Cir. 2001).

[23] FED. R. CRIM. P. 52(a).

[24] See United States v. Olano, 507 U.S. 725, 734 (1993).

Harper next argues that the district court erred when it refused to ask the jury panel three proposed questions about the jury's ability to follow anticipated jury instructions about the law of conspiracy and aiding and abetting. We review a district court's refusal to question potential jurors regarding a particular provision of law for abuse of discretion.[25] "The trial court has broad discretion to determine who will question potential jurors and what questions will be asked."[26] "We grant broad discretion to the trial judge in making determinations of impartiality and will not interfere with such decisions absent a clear abuse of discretion."[27]

One proposed question concerned Harper's defense theory and provided that a defendant's "mere presence" does not establish proof of conspiracy. The other two questions outlined the elements the government would have to prove for conspiracy and aiding and abetting and asked the jury whether they would be able to follow the law and require the government to prove the elements beyond a reasonable doubt. The district court instead asked the potential jurors a general question about their ability to follow the law and the instructions of the court:

> Is there anyone on the jury panel who, for religious reasons or otherwise, could not follow the legal instructions of the law as the Court gives it to you without questioning the wisdom or correctness of that law? Because the jury is obligated to do that. Is there anyone who has a hesitancy to say that you would strictly follow the law as the Court instructs you the law is and instructs you to follow?

Harper asserts that his proposed questions were designed to detect the bias of potential jurors against specific provisions of law, and in particular,

---

[25] United States v. Rodriguez, 993 F.2d 1170, 1176 (5th Cir. 1993).

[26] United States v. Rasco, 123 F.3d 222, 231 (5th Cir. 1997).

[27] United States v. Greer, 968 F.2d 433, 435 (5th Cir. 1992) (en banc) (internal quotation omitted).

detect whether any juror held the opinion that mere association with drug traffickers would be sufficient to establish guilt of drug trafficking. He argues that the district court's refusal to ask specific questions prevented him from discovering any such juror bias and thus was an abuse of discretion.

"[A] trial court is not obligated to inquire as to whether the prospective jurors would accept any particular proposition of law."[28] "The test for determining whether a court has adequately questioned prospective jurors regarding bias is whether 'the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present.'"[29] "A court abuses its discretion when the scope of voir dire is inadequate to discover bias and deprives the defendant of an opportunity to make reasonable use of peremptory challenges."[30]

The district court did not abuse its discretion when it declined to ask questions about potential jurors' ability to follow specific provisions of law and instead asked generally whether the jury would follow the law as instructed. In United States v. Rodriguez, this court considered whether the district court abused its discretion when it refused to ask a question concerning the defendant's Fifth Amendment right not to testify.[31] We declared that a district court had no obligation to ask the jury about specific provisions of law and concluded that there was no abuse of discretion where the district court "questioned the jurors as to their ability to be impartial and to follow the law as

---

[28] Rodriguez, 993 F.2d at 1176.

[29] Greer, 968 F.2d at 435 (quoting United States v. Saimiento-Rozo, 676 F.2d 146, 148 (5th Cir. 1982)).

[30] Id. (citing United States v. Brown, 799 F.2d 134, 136 (4th Cir. 1986)).

[31] Rodriguez, 993 F.2d at 1176.

instructed at the end of the trial and instructed the jurors prior to their deliberations as to the Fifth Amendment privilege."[32]

In this case, the district court asked the potential jurors about their ability to follow legal instructions and admonished the jury that it was "obligated to do that." After the jury was sworn and before evidence was presented, the district court again instructed the jury that "[y]ou will then have to apply those facts to the law as the Court will give it to you. You must follow that law whether you agree with it or not." At the conclusion of the case the district court instructed the jury:

> in reaching your decision as to the facts, it is your sworn duty to follow all of the rules of law as I explain them to you. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences.

The district court did not abuse its discretion in refusing to ask Harper's proposed questions.[33]

### III

### A

We now address the arguments raised by Collins, who first argues that the district court erred in using a conviction in this case as a "prior conviction" for sentencing purposes. The jury convicted Collins on Counts Four and Ten, which were both charges for possession of a weapon during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Count Four related to possession of a weapon on June 25, 2004, and Count Ten related to possession of a weapon on July 26, 2004. During sentencing, over Collins's objection to the PSR, the district court

---

[32] Id.

[33] See id.

treated Count Four as a prior conviction and enhanced the sentence for Count Ten to twenty-five years (to be served consecutively to the five years for Count Four).

Collins argues that treating his conviction on Count Ten as a "second or subsequent conviction" violated his Sixth Amendment right to trial by jury because the Count Ten conviction was in reality a "simultaneous conviction." He also argues that whether a conviction is a "second or subsequent" conviction is a fact for the jury to determine beyond a reasonable doubt. Finally, he argues that the "prior conviction" enhancement violates United States v. Booker.[34]

Collins acknowledges that his argument is foreclosed by Deal v. United States, in which the Supreme Court held that when a defendant is convicted of multiple counts in violation of § 924(c)(1) in a single proceeding, the convictions on all counts after the first one may be treated as "second or subsequent convictions."[35] The Court rejected the argument that to be treated as a "prior conviction," the conviction must be a final judgment from a prior proceeding.[36] Deal remains intact after Booker.[37]

## B

Collins next argues that the district court erred by imposing an unreasonable sentence. Collins was sentenced to 370 months for his conviction of the six counts charged. Collins argues that his thirty-year sentence is unreasonable because it is inconsistent with the applicable Guidelines' range and is greater than necessary to comply with the purposes of sentencing set forth

---

[34] 543 U.S. 220 (2005).

[35] 508 U.S. 129,132–33 (1993).

[36] Id. at 132.

[37] See United States v. Thompson, 454 F.3d 459, 467 (5th Cir.), cert. denied, 127 S.Ct. 602 (U.S. Nov. 13, 2006).

in 18 U.S.C. § 3553(a). He argues that several mitigating factors justify a lower sentence: his young age, that he sought drug rehabilitation in prison, that this was his first brush with the law, and that the sentence amounts to a life sentence.

Collins's 370-month sentence is an aggregate sentence based on his conviction on six counts. He was sentenced to ten months imprisonment on each of Counts One, Two, Three, and Nine, to be served concurrently; 60 months imprisonment on Count Four; and 300 months imprisonment on Count Ten. The court ordered that the 10-month, 60-month, and 300-month sentences be served consecutive to one another. Both the 60-month and 300-month sentences were statutory minimums,[38] and the district court could "'impose a sentence of imprisonment below a statutory minimum . . . only if: (1) the Government [so moves] pursuant to 18 U.S.C. § 3553(e)[,] asserting the defendant's substantial assistance to the Government; or (2) the defendant meets the "safety valve" criteria set forth in 18 U.S.C. § 3553(f).' Otherwise, post-Booker sentencing courts lack discretion to depart below relevant statutory minimums."[39] In this case, the government did not move for a lower sentence and Collins does not raise an argument under § 3553(f). The district court could therefore not depart below the sentences it actually imposed for Counts Four and Ten.

Accordingly, the district court only had discretion with regard to the 10-month sentence imposed for Counts Ten, Two, Three and Nine. The applicable Guidelines' range for those counts is 63-79 months, and Collins makes no

---

[38] Section 924(c) provides: "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed for the . . . drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii). Section 924(c) further provides that the term of imprisonment for a violation of the statute is five years for the first offense and twenty-five years for second or subsequent offense. Id. § 924(c)(1)(A)(i), (C)(i).

[39] United States v. Krumnow, 476 F.3d 294, 297 (5th Cir. 2007) (quoting United States v. Phillips, 382 F.3d 489, 499 (5th Cir. 2004)) (alterations and emphasis in original).

sufficient argument for why the court's substantially lower sentence was unreasonable.

* * * * * *

For the foregoing reasons, we AFFIRM the convictions.