**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 25, 2012

Lyle W. Cayce
Clerk

No. 11-30080

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES D. JONES,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:08-CR-23-1

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

Charles D. Jones challenges his jury-trial convictions for one count of tax evasion, in violation of 26 U.S.C. § 7201, and two counts of filing a false tax return, in violation of 26 U.S.C. § 7206(1), as well as his being sentenced to 27-months' imprisonment. He claims insufficient evidence for the convictions and maintains the district court erred regarding modifying the *voir dire* jury questionnaire, refusing Jones' proposed tax-evasion instruction, and calculating the tax loss for applying the advisory Sentencing Guidelines. AFFIRMED.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30080

I.

Jones is an attorney and former member of the Louisiana legislature. He retired from public office in 2008. During the time at issue, his primary sources of income were his legislative salary and legal fees generated by his law practice.

Dating back to 1981, Jones was chronically delinquent in filing tax returns and paying taxes. In 1989, the Internal Revenue Service (IRS) began levying his legislative salary and filing tax liens against his property in Ouachita Parish. As penalties and interest accrued, Jones, with his attorney and accountant, began meeting with the IRS.

In 1995, Jones received a legal-fee payment, in the approximate amount of $108,000 (the Sims fee), for a personal-injury action. Jones converted the payment into cashier's checks and did not list it on financial statements he provided to the IRS in 1997. Jones never made the Sims fee known to the IRS.

In 1999, Jones received two legal-fee payments from another action (the Wiley fee). An approximate $555,000 payment was received in March; one for $90,000, in August. As with the Sims fee, Jones converted the payments into cashier's checks. Unaware of that income, the IRS classified Jones' tax status as "currently uncollectible" and ceased collection activity in April 1999.

Jones filed his tax return for calendar year 1999 in May 2001. But, he only reported $200,000 of the Wiley fee in his income for that year. His return for calendar year 2000 was filed in August 2001.

In September 2002, Jones received an audit letter from the IRS. It began a criminal investigation into his tax activity shortly thereafter. In October 2002, for the corporate entity representing the separate law practices of Jones and another (Jones and Charles Law Office), Jones filed corporate tax returns for calendar years 1999 and 2000. In the corporate return for 1999, he reported the Wiley fee as corporate income, but claimed he personally received only $200,000 of it as officer compensation. These were the only corporate returns ever filed by

2

No. 11-30080

that entity. At that time, Jones paid $62,000 as part of the corporate-tax liability; later, he made two more corporate-tax payments: $62,000 and $15,703. (The total corporate-tax payment of $139,703 is the amount Jones claims should not be included in the tax loss for sentencing purposes.)

In 2003, using money from the Wiley fee, Jones paid a friend and that friend's development company to purchase a lot and build a home for Jones. The house was then placed in the name of Jones' wife, who obtained a mortgage on the home, despite not needing it. Those steps had the potential effect of putting the house out of the IRS' reach. At the time of the home purchase–December 2003–Jones owed approximately $119,000 to the IRS, based only on the income he had reported.

In October 2003, Jones filed an amended personal tax return for calendar year 1999. He again did not report the entire Wiley fee.

Jones was indicted in January 2008 for two counts of willfully filing a false tax return–for his amended 1999 and his 2000 personal returns–and one count of tax evasion during the period 19 July 1995 through 19 December 2003. During *voir dire*, Jones moved for, and was granted, a change of venue from Monroe to Shreveport, Louisiana. At the first trial in May 2010, the jury was unable to reach a verdict.

Jones was retried in August 2010 in Shreveport. He was convicted on all three counts. In January 2011, Jones was sentenced, *inter alia*, to 27-months' imprisonment.

## II.

Jones' trial lasted six days. He did not testify. Claiming the Government failed to prove intent, he maintains the evidence was insufficient to support his tax-evasion and two false-return convictions. He also claims the district court erred by:  limiting the scope of *voir dire* through the form of the utilized questionnaire, which differed from the one used for the first trial; refusing his

3

No. 11-30080

proposed tax-evasion instruction; and not crediting him, when calculating tax loss for sentencing, for the payments made on the corporate return for calendar year 1999.

## A.

In challenging the sufficiency of the evidence for his three convictions, Jones challenges only the claimed failure to prove the intent element for each. He concedes, for example, that: he under-reported his income on his tax returns; he deposited some legal fees into his personal bank account; and his financial bookkeeping was not attentive to detail.

This challenge is consistent with his Rule 29 motions for judgment of acquittal. He so moved at the close of the Government's case, and the court took the motion under advisement. Jones re-urged his motion at the close of the evidence. His motion for each count was premised only on the evidence's being insufficient to prove intent. The motion was denied.

When reviewing sufficiency of the evidence, our court is "highly deferential to the verdict". *United States v. Harris*, 293 F.3d 863, 869 (5th Cir. 2002). Along that line, because Jones preserved in district court his sufficiency challenge concerning intent for each conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found [that] essential element[] of the crime beyond a reasonable doubt" for each count. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis omitted). In that regard, our court draws all reasonable inferences and credibility determinations in favor of the verdict, and the evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt. *Id.*; *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). In short, the inquiry must be limited "to whether the jury's verdict was reasonable, not whether we believe it to be correct". *United States v. Williams*, 264 F.3d 561, 576 (5th Cir. 2001). Viewing the evidence in the

No. 11-30080

requisite light most favorable to the verdict, it is sufficient to sustain Jones'
convictions, including for a reasonable juror to find intent—the willfulness of
Jones' violations.

1.

To establish a violation of 26 U.S.C. § 7201 (tax evasion), the Government
had to prove, beyond a reasonable doubt:  (1) the existence of a tax deficiency; (2)
an affirmative act constituting an evasion, or an attempted evasion, of the tax;
and (3) willfulness. *United States v. Miller*, 588 F.3d 897, 907 (5th Cir. 2009)
(internal quotation marks omitted). A "mere failure to pay" does not constitute
evasion; instead, evasion is "any conduct, the likely effect of which would be to
mislead or to conceal". *Id.* (internal quotation marks omitted); *United States v.
Nolen*, 472 F.3d 362, 379 (5th Cir. 2006).

Jones contends the evidence is insufficient on prongs two and three; that
it demonstrates only a failure to pay. But, the Government counters that such
failure, in conjunction with the affirmative acts enumerated in the indictment
(and provided to the jury through the tax-evasion instruction and indictment),
constitute evasion. *See Nolen*, 472 F.3d at 378-79.  The Government maintains
it presented sufficient evidence supporting each charged affirmative act of
evasion. For example, while his tax file was in active collection, Jones received
the Sims fee, converted it to cashier's checks, held them from 1995 to 1999, and
failed to report the fee in a financial statement to the IRS in 1997. Jones took
very similar actions with the Wiley fee. The Government contends that the only
conceivable reason for taking that action was to evade taxes.

The Government also contends Jones knew that any property owned or
acquired by him in Ouachita Parish would be subject to still-active liens. It
maintains that is the reason Jones, in 2003, used the development company (and
Jones' friend) to purchase property for him and then to transfer it into his wife's
name–an attempt to keep assets out of the IRS' reach.

No. 11-30080

The evidence is sufficient to support the tax-evasion conviction. *See Williams*, 264 F.3d at 576 ("the jury is free to choose among all reasonable constructions of the evidence" (internal quotation marks omitted)). Re-stated, in the light of the evidence, a reasonable juror could find such evasion. For example, by Jones' placing money on circuitous paths of cashier's checks and funneling it into a house purchased through a convoluted scheme designed to put it out of reach, a reasonable juror could find Jones took affirmative steps to evade his taxes.

2.

To establish each of the two charged violations of 26 U.S.C. § 7206(1) (filing false return), the Government had to prove, beyond a reasonable doubt: (1) Jones made and signed a false return; (2) a false entry was material; (3) the return contained a written declaration that it was made under the penalties of perjury; (4) Jones did not believe the return was true and correct when he signed it; and (5) he signed it willfully and with specific intent to violate the law. *United States v. Bishop*, 264 F.3d 535, 552 (5th Cir. 2001). As discussed, Jones challenges only the sufficiency of the evidence regarding intent (willfulness).

a.

One false-return count concerned Jones' amended personal tax return for calendar year 1999, filed in 2003. (The original return for that year was filed in May 2001.) Jones under-reported his income by approximately $523,000. In October 2002, for calendar year 1999, Jones filed the corporate return for Jones and Charles Law Office. In it, the large Wiley fee, received solely by Jones, was reported fully; but, the return claimed Jones personally received only $200,000 as compensation. Then, in October 2003, Jones filed his amended personal return for calendar year 1999, but did not report the entire Wiley fee.

Jones concedes the Wiley fee may have been reported wrongly on the corporate return, but he contends this was a mistake made while he was relying

6

No. 11-30080

on a qualified tax professional. Such reliance can negate the intent element under § 7206(1), but Jones must, of course, "demonstrate that he provided full information to the preparer and then filed the return without having reason to believe it was incorrect". *United States v. Charroux*, 3 F.3d 827, 831 (5th Cir. 1993) (internal quotation marks omitted). That exception does not apply here because a reasonable juror could find:  Jones' system for tracking legal fees was inadequate; and, he did not provide the requisite full information to his tax preparers. For example, Jones placed the Wiley fee in his personal bank account and never provided that information to his secretary, who was responsible for creating the income summaries provided to Jones' accountant for use in preparing his tax return.

As stated, regarding the amended personal return for calendar year 1999 and Jones' omission of most of the Wiley fee, Jones personally received the benefit of the entire fee. His tax preparer testified that, had she known the benefit was exclusively personal to Jones, she would have included it on his personal, *rather than the corporate*, return. But, Jones did not tell her that he received the benefit personally. The timing of the corporate filing–in the midst of the IRS audit, and while the "corporation" was defunct–further supports that a reasonable juror could find the corporate return was a sham, designed to thwart the IRS audit. And, as such, Jones would have known his amended personal return for calendar year 1999 was incorrect and filed it with intent to violate the law.

b.

The other false-return count concerned Jones' personal tax return for calendar year 2000, filed in August 2001. For that return, Jones under-reported his income by more than $50,000. Jones concedes that the legal fees in question were income. Again, and as discussed, only intent (willfulness) is at issue.

7

No. 11-30080

The omission of significant amounts of collected legal fees obviously led to significantly lower taxable income. Furthermore, a reasonable juror could find that Jones knew of those deficiencies as he, among other things, deposited some checks into his personal bank account, including one for $10,000. Accordingly, a reasonable juror could find: Jones knew of the deficiencies; and, his false filing was willful, rather than accidental.

B.

Our court defers to the judgment of the district court regarding the scope of *voir dire*, absent abuse of discretion. *E.g.*, *United States v. Rodriguez*, 993 F.2d 1170, 1176 (5th Cir. 1993); *see also* Fed. R. Crim. P. 24(a) (district court control over jury selection). The necessary broad jury-selection discretion given a district court includes determining "what questions will be asked" prospective jurors and whether they are impartial. *United States v. Harper*, 527 F.3d 396, 409 (5th Cir. 2008) (internal quotation marks omitted). "A court abuses its discretion when the scope of voir dire is inadequate to discover bias and deprives the defendant of an opportunity to make reasonable use of peremptory challenges." *Id.* (internal quotation marks omitted).

There were three *voir dires* for the two trials. The first *voir dire* occurred in Monroe, which ultimately concluded in a change of venue to Shreveport.

There, the questionnaire for *voir dire* was identical to that used earlier in Monroe. The jury was unable to reach a verdict.

The retrial was also held in Shreveport. The *voir dire* used a slightly altered questionnaire (discussed below) from the first two *voir dires*. Jones was convicted.

Jones contends questions used for his retrial questionnaire were not sufficient to apprise his counsel of potential bias relating to his public-official status. He points to the difference between the public-official questions in the questionnaire for the first trial (where *voir dire* first uncovered local bias

No. 11-30080

sufficient to grant a change of venue and the second *voir dire* produced a jury that could not reach a verdict), and the retrial, at which he was convicted.

The following *voir dire* procedure was used to address possible bias. The prospective jurors filled out the questionnaire, and the judge asked them in open court about potential bias. This was followed by individual *in camera* proceedings, at which:  the judge and counsel asked some of the prospective jurors about their answers to the questionnaire and to the judge's questions in open court; counsel offered objections regarding the prospective juror, including for public-official bias; more questions could be asked of that person; and the judge ruled on dismissal *vel non* for cause, sometimes dismissing for public-official bias. *Voir dire* lasted an entire day for the retrial, as it had for each of the first two *voir dires*.

The relevant questions in the first-trial questionnaire were:

> 15.   Are you inclined to think that a public official accused of a crime is probably guilty?
> ___ Yes      ___ No

> 16.   Are you less likely to believe a person who is a public official than a person who is not?
> ___ Yes      ___ No

Those for the retrial, on the other hand, used the following language:

> 15.   As noted earlier, Defendant Charles Jones previously served as both a Louisiana State Representative and a Louisiana State Senator.

>> a.   Would the fact that he is a former public official affect your ability to fairly determine his guilt or innocence?
>> ___ Yes      ___ No

>> b.   Would you be less likely to believe him solely because he was a former public official?      ___ Yes      ___ No

9

No. 11-30080

Jones contends the retrial questions are insufficient, claiming prospective jurors are less likely to answer "Yes" to a question about bias against a specific, named individual than to a question about public officials generally.

But, "[t]he Constitution does not always entitle a defendant to have questions posed during voir dire specifically directed to matters that conceivably might prejudice veniremen against him". *Ristaino v. Ross*, 424 U.S. 589, 594 (1976). "[T]he . . . obligation to the defendant to impanel an impartial jury generally can be satisfied by less than an inquiry into a specific prejudice feared by the defendant". *Id.* at 595. That said, by focusing specifically on Jones, the relevant questions in the second questionnaire appropriately addressed the potential bias he feared. As such, those questions "produce[d] some basis for defense counsel to exercise a reasonably knowledgeable right of challenge". *Rodriguez*, 993 F.2d at 1176. In any event, the *in camera* proceedings during *voir dire* included discussions of potential bias toward public officials in general.

Furthermore, the relevant questions in the first questionnaire were potentially confusing and overly broad. For example, question 16, as worded, encompasses speech well beyond trial testimony, such as campaign ads and political speech.

In short, altering the form of the written questions for the retrial was not an abuse of discretion. The procedure used was more than sufficient, especially in the light of the earlier change of venue from Monroe to Shreveport.

C.

The district court's refusing Jones' proposed tax-evasion instruction is reviewed for abuse of discretion. *United States v. Simkanin*, 420 F.3d 397, 410 (5th Cir. 2005). Such abuse will be found only if the refused instruction: (1) was substantively correct; (2) was not substantially covered in the jury charge; and (3) concerned an important point in the trial such that Jones' ability to present

10

No. 11-30080

effectively a particular defense was impaired. *Id.* In other words, an abuse of discretion will not be found when the given instructions adequately covered the issues presented. *Id.*

Jones offered the following tax-evasion instruction (count 3):

> Mere failure by defendant to pay federal income tax that is due, *without proof that the defendant committed at least one of the affirmative acts set forth in the indictment and did so with the purpose of evading the payment of taxes* to the Government, is an insufficient basis to find the Defendant guilty of count 3.

(Emphasis added.) The district court refused Jones' instruction as unnecessary and potentially confusing for jurors. The following instruction was given:

> Title 26, United States Code, Section 7201, makes it a crime for anyone willfully to attempt to evade or defeat the payment of federal income tax. For you to find the Defendant guilty of this crime, you must be convinced that the Government has proved each of the following beyond a reasonable doubt:
>
> > **First:**    That the Defendant owed a substantial amount of tax;
> >
> > **Second:**    *That the Defendant committed at least one of the affirmative acts set forth in the Indictment;*
> >
> > **Third:**    *That when the Defendant committed the affirmative act, he did so with the purpose of evading the payment of taxes* to the Government.
>
> The proof need not show the precise amount or all of the additional tax due as alleged in the Indictment, but the Government must prove beyond a reasonable doubt that the *Defendant attempted to evade or defeat*

11

No. 11-30080

> *payment of some substantial portion of the additional*
> *tax he knew he was required by law to pay.*

(Emphasis added.)

Jones contends his proposed instruction was necessary to clarify the distinction between, and avoid potential juror confusion over, tax evasion and willful failure to pay (or other lesser offenses). According to Jones, potential for confusion existed because the Government repeatedly focused on Jones' history of late returns and payments; and, as a result, the jury could have concluded that merely filing late returns and failing to pay tax obligations, when one has the money to pay them, is evasion.  Therefore, according to Jones, his proposed instruction was needed to mitigate that risk of confusion.

But, the given instruction was a correct statement of the law, adequately informing the jury that, *inter alia*, an affirmative act of evasion was required. Therefore, Jones' instruction was unnecessary. *E.g.*, *United States v. Cain*, 440 F.3d 672, 674-75 (5th Cir. 2006).

## D.

For sentencing under the advisory Guidelines, Jones contends he should have received credit in the tax-loss calculation for the $139,703 he paid in connection with his corporate return for calendar year 1999 (not filed, however, until October 2002, with payments made between then and July 2003), which included the Wiley fee. (The Government claims this issue was not raised in district court and, therefore, maintains plain-error review is mandated. The issue, however, was adequately preserved.)

If the tax loss were reduced by the amount urged by Jones, his offense level would drop from 18 to 16; his resulting advisory Guidelines sentencing range, from 27-33 months to 21-27 months. As noted, he was sentenced to 27 months' imprisonment.

For a preserved issue, as in this instance, and although, post-*Booker*, the Sentencing Guidelines are advisory only and an ultimate sentence is reviewed for reasonableness under an abuse-of-discretion standard, the district court must still properly calculate the advisory Guidelines sentencing range for use in deciding on the sentence to impose. *E.g.*, *Gall v. United States*, 552 U.S. 38, 51 (2007). In that respect, its application of the Guidelines is reviewed *de novo*; its factual findings, only for clear error. *E.g.*, *United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008); *United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005).

At issue is the application of Guideline §§ 2T1.1(c)(1) and 2T1.1(c)(5), which provide that tax loss should reflect the amount "that was the object of the offense", without any credit given for "payment of the tax subsequent to the commission of the offense". Jones asserts the payments he made for the corporate return for calendar year 1999, *but not filed until 2002*, should be deducted from the tax loss. He bases this on the following contention: the Wiley fee is associated with count two (1999 false amended personal return); he made the payments due on the corporate return, including for the Wiley fee, between 24 October 2002 and 7 July 2003; and the conduct giving rise to count two did not occur until 29 October 2003, when he filed his amended personal return for calendar year 1999.

Jones' contention fails because: the Wiley fee is not associated solely with count two; and, even if it were, count two is not considered alone for the purpose of the tax-loss calculation. Instead, "[a]ll counts involving substantially the same harm [are] grouped together" for sentencing purposes. U.S.S.G. § 3D1.2. Counts involve substantially the same harm when they, *inter alia*, involve the same victim and two or more acts "connected by a common criminal objective" *or* when the offense level is determined by the total amount of harm or loss. *Id.* The

counts involved here–tax evasion and filing false returns–were properly grouped by the district court because they meet the requirements of Guideline § 3D1.2.

Jones began evading taxes in July 1995.  In 1999, the Wiley fee became implicated by that tax-evasion scheme. Four of the 11 affirmative acts of evasion charged in the indictment are explicitly associated with the Wiley fee and occurred before any of the above-described payments were made. Under § 2T1.1(c)(5), none of the corporate-return payments should be credited as they were subsequent to the commission of the tax-evasion offense.

As discussed *supra*, that the corporate return was filed, and payments made on it, *after* Jones learned in 2002 that he was being audited by the IRS further support this result, because those payments can reasonably be viewed as merely an effort to further the ongoing tax-evasion scheme that encompassed more than just the Wiley fee. *See United States v. Tandon*, 111 F.3d 482, 490 (6th Cir. 1997) (deducting from tax-loss calculation payments made after notice of audit or investigation would cause perverse result); U.S.S.G. § 2T1.1 (tax loss is what would have resulted had offense been successfully completed). (The payments on the corporate return for calendar year 1999 have been held in escrow, with a decision by the IRS on their disposition to be made upon conclusion of this criminal case.)

### III.

For the foregoing reasons, the judgment is AFFIRMED.