**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 91-9539

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

JOSE RODRIGUEZ, ARISTIDES
NAPOLES, and MARLENE GUERRA,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Louisiana
(June 14, 1993)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and DeMOSS, Circuit Judges

DeMOSS, Circuit Judge:

I.

On January 25, 1991, agents of the New Orleans Police Department, Jefferson Parish Sheriff's Office and the Federal Bureau of Investigation were involved in an investigation of a suspected drug dealer, Estrella Del Sol. The agents observed Del Sol drive a gray Blazer into the parking lot of the New Orleans Motor Lodge (now known as the Howard Johnson Motel) in the 4200 block of Old Gentilly Road in New Orleans and park near a black and white Blazer belonging to Aristides Napoles.

Earlier that day, the motel clerk, Norman Kunsky, noticed Del Sol outside the hotel. Kunsky had also observed Aristides Napoles and Marlene Guerra drive a black and white Blazer into the hotel parking lot. He noted that a yellow Cadillac, driven by a man, followed the black and white Blazer into the parking lot. Kunsky could not identify the driver of the yellow Cadillac. Kunsky testified at trial that Marlene Guerra entered the motel and registered for one room for herself and Napoles, and one for the other man. After Guerra had registered and left the motel lobby, Kunsky observed that the black and white Blazer and the Cadillac were moved to another location in the parking lot near the hotel rooms.

Later, while surveilling the motel parking lot area, police agents observed Napoles use keys to open the yellow Cadillac which bore a Florida license plate. Napoles and a man later identified as Jose Rodriguez got in the car, but did not leave. Napoles sat on the passenger side of the car and Rodriguez sat in the driver's seat. After a few minutes, Napoles and Rodriguez left the Cadillac. The Cadillac was later determined to be owned by Napoles's sister, Miriam Napoles.

Shortly thereafter, Napoles, Guerra, and Rodriguez left the motel in the black and white Blazer. The agents followed the three to a storage facility where Guerra was observed placing a brown paper bag in a locker. The agents stopped the defendants at the facility. Guerra, the lessee of the storage locker, gave the agents consent to search the locker. Agents searched the locker

2

and found a brown paper bag containing a triple-beam scale with a trace of white powder, which later tested positive for cocaine, as well as plastic bags and aluminum foil.

Guerra denied that she owned the yellow Cadillac or had any knowledge, or that the other defendants had any knowledge of it. Napoles and Rodriguez also denied to the agents any knowledge of the yellow Cadillac.

Meanwhile, back at the motel, a drug-detection dog alerted to the passenger side of the yellow Cadillac; and after obtaining a search warrant for the car, the agents retrieved a kilogram of cocaine, valued at approximately $28,000-$32,000, wrapped in aluminum foil, stashed behind the firewall.

The defendants were arrested and were taken to jail on that same day.

A jury convicted Rodriguez, Napoles, and Guerra of conspiracy to possess with intent to distribute and possession with intent to distribute one kilogram of cocaine. The court sentenced Napoles to serve concurrent terms of 106 months of imprisonment on each count, to pay a $15,000 fine, and to be placed under supervised release for concurrent five-year terms; Guerra to serve concurrent terms of sixty months on each count, to pay a $10,000 fine, and to be placed under supervised release for concurrent terms of five years and Rodriguez to serve concurrent terms of sixty-six months on each count and to be placed under supervised release for concurrent four-year terms. On appeal the defendants raised four grounds for relief as follows:

1. Rodriguez's right to counsel was violated.

2. The evidence was not sufficient to support any of the defendants' convictions.

3. The voir dire violated Napoles' and Guerra's due process rights.

4. The court erred in finding that Rodriguez was not entitled to an adjustment from the Guidelines sentencing range because he was a minor participant.

Because we REVERSE the trial court's conviction of Rodriguez, we do not reach the issues as to Rodriguez's complaints in Ground two and four. We AFFIRM the trial court's actions as to all other grounds involving defendants Napoles and Guerra.

II.

<u>WHETHER RODRIGUEZ'S RIGHT TO COUNSEL WAS VIOLATED</u>.

Rodriguez contends that the in-custody statement taken from him on February 1, 1991 was taken in violation of his Sixth Amendment right to counsel and is therefore clear error.

Rodriguez had been in custody of the State since January 25, 1991, charged with possession with the intent to distribute the cocaine in question in the State of Louisiana and had appeared in court and been appointed counsel. On February 1, 1991, FBI Agent John Cataldi went to the jail where Rodriguez, Guerra and Napoles were being held in custody and took statements from each of the defendants. Rodriguez complains that Agent Cataldi made no effort to contact his appointed counsel. Rodriguez argues that because he was in custody, had been arraigned and appointed counsel on the same identical charges in the State courts and did not initiate the contact with the Agent that led to the statement, the Agent's

4

contact with him was police initiated and therefore there was no valid waiver of his Sixth Amendment right. <u>Michigan v. Jackson</u>, 475 U.S. 625, 106 S. Ct. 1404, 89 L. Ed. 2d 631 (1986). The right to counsel under these circumstances, he claims, raises compliance with <u>Miranda v. Arizona</u>, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

On September 18, 1991, the court held a hearing to determine whether to suppress the February 1, 1991 statements made by Rodriguez, Guerra and Napoles and a statement which was taken from Rodriguez on the day he was arrested, January 25, 1991. At the hearing, Rodriguez's attorney objected to the hearsay nature of Cataldi's testimony concerning the conversation he had with Shaw that resulted in the February 1 contact with the defendants. The judge instructed Cataldi to limit his testimony only to conversations he had had with the parties in the case. The February 1 statement made by Rodriguez was never introduced at the suppression hearing and therefore no ruling was made as to its admissibility by the court and the January 25 statement, although ruled admissible, was never introduced at trial.[1]

Prior to trial, the prosecutor and Rodriguez's counsel stipulated that if Cataldi were called to testify, he would testify that in the February 1 interview, Rodriguez gave him a statement admitting that (i) Rodriguez drove from Miami to New Orleans in a small yellow vehicle different from the one narcotics agents

---

[1] The district court ruled that all statements made by Guerra and Napoles were admissible. However, neither defendant contests this ruling on appeal.

searched; (ii) Rodriguez met Napoles and Guerra at a gas station off interstate highway I-10 somewhere between Miami and New Orleans; (iii) Rodriguez followed Guerra and Napoles who were in a black and white Blazer to the New Orleans Motor Lodge; and (iv) Guerra rented two rooms for them and, after a while, Rodriguez, Guerra and Napoles took a ride in the gray Blazer, when they were stopped by the police.

Rodriguez's attorney stated at trial that although she had agreed to this stipulation, she wanted the record to reflect it was simply a stipulation as to what Cataldi would testify. She made it clear that the stipulation "was in no way to negatively impact on any previous motions."

At the trial on September 23, 1991, the government attempted to introduce the February 1 statement by Rodriguez to Cataldi whereupon Rodriguez's attorney asked the judge to hold a hearing out of the presence of the jury to determine whether the statement was voluntarily given pursuant to Title 18 U.S.C. § 3501.[2]

---

[2]8 U.S.C. 3501. Admissibility of confessions
    (a) In any criminal prosecution brought by the United States . . ., a confession as defined in subsection (e) hereof, shall be admissible in evidence if it is voluntarily given. Before such confession is received in evidence, the trial judge shall, out of the presence of the jury, determine any issue as to voluntariness. If the trial judge determines that the confession was voluntarily made it shall be admitted in evidence and the trial judge shall permit the jury to hear relevant evidence on the issue of voluntariness and shall instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances.

    (b) The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession, including (1) the time elapsing between arrest and arraignment of the defendant making

6

At that hearing, the government put Agent Cataldi on the stand; and Cataldi testified that he had received a call from Gary Shaw, a co-defendant of Rodriguez, Guerra and Napoles and that Shaw indicated to Cataldi that "they" all wanted to speak to him. He testified that Shaw made no mention of anyone in particular. Cataldi testified that he interviewed the defendants each individually and asked them if they wanted to speak to him. Cataldi said that he told each defendant: "I understand you want to speak with me" and "you can have your attorney here if you wish." However, Cataldi testified that he did not ask Rodriguez whether he had any contact with Shaw. Cataldi also testified that he knew Rodriguez was represented by counsel and was in custody.

After confirming that Rodriguez wished to speak with him, Cataldi testified that he had Officer Lejarsa advise Rodriguez of his rights through the use of a Spanish "advice of right" form. After Rodriguez indicated that he understood his rights, and was

---

the confession, it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that nay such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without assistance of counsel when questioned and when giving such confession.

The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

(e)  As used in this section, the term "confession" means any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing.

willing to speak to the officers, he signed the waiver of rights form and Cataldi then conducted the interview.

Rodriguez's counsel objected to the February 1 statement at this § 3501 hearing because (i) the statement was an in-custody statement, (ii) the agent knew that Rodriguez was represented by counsel, (iii) there was no evidence that Rodriguez had called Cataldi and asked him to come, and (iv) Cataldi's call had come from another defendant [Shaw] who was not housed with Rodriguez.

The judge overruled this objection and allowed the statement.

When trial commenced, the government read the stipulation to the jury regarding the February 1 interview of Rodriguez by Cataldi.

The government first claims that this issue should be dismissed because Rodriguez's attorney waived the 6th Amendment claims because she stated on the record prior to trial that she had no objection to the government going into the February 1 statement as long as the government laid the predicate pursuant to 18 U.S.C. 3500[3] that "Rodriguez was advised to his right at the appropriate time."

A review of the record does not support the government's contentions. Rodriguez's attorney objected to the February 1 statement throughout the court proceedings and argued at the §3501

_____

[3]Although the record reflects that Counsel cited 18 U.S.C. 3500, "Demands for Production of Statements and Reports of Witnesses" in her argument that the predicate be laid, it is evident from the context in which the statute was cited and the fact that Counsel later called for a § 3501 hearing at the appropriate time during the trial, that the statute she meant to cite was 18 U.S.C. 3501, "Admissibility of Confession."

8

hearing that the government had failed to lay the proper predicate because Cataldi's contact with Rodriguez was not legal.

The government next contends that should this Court find that Rodriguez's attorney did not waive the 6th Amendment claims, this issue is nevertheless without merit because it was Rodriguez who initiated the contact with Cataldi and therefore <u>Michigan v. Jackson</u>, 475 U.S. 625 is not applicable in this case. The Supreme Court in that case held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." 475 U.S. at 636. The government claims that Rodriguez initiated the contact with Cataldi when he asked Shaw to call Cataldi and invite Cataldi to come to the jail and speak with Rodriguez.

The government also claims that in <u>Edwards v. Arizona</u>, 451 U.S. 477 (1981) the court recognized that a defendant may validly waive his right to counsel through initiating further contact with the officers and that that is what Rodriguez did here.

The rule in the Fifth Circuit is that a knowing and intelligent waiver cannot be found once the Fifth Amendment right to counsel has been clearly invoked unless the accused initiates the renewed contact. See, <u>United States v. Massey</u>, 550 F.2d 300 (5th Cir. 1977); <u>United States v. Priest</u>, 409 F.2d 491 (5th Cir. 1969).

Waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case "upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused." Edwards v. Arizona, 451 U.S. at 1884 and 482.

After initially being advised of his Miranda rights, the accused may himself validly waive his rights and respond to interrogation. See North Carolina v. Butler, 441 U. S. 369, 99 S. Ct., 1755, 60 L. Ed.2d 286 (1979). However, additional safeguards are necessary when the accused has been appointed counsel. A valid waiver of the right to have counsel present during interrogation cannot be established by showing only that the accused responded to police-initiated interrogation after being again advised of his rights. Edwards v. Arizona, 451 U.S. at 478.

Had Rodriguez initiated the meeting on February 1, the police could have lawfully listened to his voluntary statements and used them against him at the trial. But this is not what the facts of this case show. First, Agent Cataldi went to the jail on February 1, not because Rodriguez called him and said he wanted to speak to him, but because he received a telephone call from Shaw, a co-defendant who said "they" wanted to speak to him. Shaw never told Cataldi who the individuals were who wanted to speak to him. Shaw could have been referring to any one or more of the defendants.

Further, even if Shaw had specifically named Rodriguez as one of the defendants who wished to speak to Cataldi, the evidence in

10

the record of Cataldi's telephone conversation with Shaw should not have been allowed in as testimony because it was hearsay. In response to Rodriguez's Counsel's objection to Cataldi's testimony because of the hearsay nature of the conversation, the judge instructed Cataldi to limit his testimony to only conversations he had had with parties in the case. Shaw was not a party in the case. Without the hearsay testimony, there would have been no evidence as to why Agent Cataldi went to the jail in the first place.

There is no testimony that Rodriguez requested Shaw to call Cataldi. Here, we find the interrogation of Rodriguez was at the instance of the authorities, and his statement, made without having had access to his previously appointed counsel, did not amount to a valid waiver and hence was inadmissible. Edwards v. Arizona, 451 U.S. 477.

Accordingly, the trial court's judgment of conviction against Rodriguez is reversed and remanded for a new trial, as to Rodriguez.

III.

### WHETHER THE EVIDENCE WAS SUFFICIENT TO SUPPORT NAPOLES' AND GUERRA'S CONVICTION.

Napoles and Guerra argue that the evidence was insufficient to convict them. In deciding the sufficiency of the evidence, the court determines whether, viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict, a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Glasser v. United States,

11

315 U.S. 60, 62 S. Ct. 457, 86 L. Ed. 680 (1942); United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir.), cert. denied, _ U.S.___, 112 S. Ct. 2952, 119 L. Ed. 2d 575 (1992).

Count I of the indictment charged that the defendants knowingly and intentionally conspired with each other to possess with intent to distribute approximately one kilogram of cocaine.

Count 2 charged that the defendants knowingly and intentionally possessed with intent to distribute approximately one kilogram of cocaine.

To establish that the defendants were guilty of a drug conspiracy, the government had to prove that they had an agreement with intent to distribute, that each had knowledge of the agreement, and that they voluntarily participated in the conspiracy. United States v. Sanchez, 961 F.2d 1169 (5th Cir. 1992), cert. denied, ___U.S.___, 113 S. Ct. 330, 121 L. Ed. 2d 248 (1992). An agreement may be inferred from concert of action, participation from a "collocation of circumstances" and knowledge from "surrounding circumstances." United States v. Espinoza-Seanez, 862 F.2d 526, 537 (5th Cir. 1988). "Mere presence at the scene and close association with those involved are insufficient factors alone; nevertheless, they are relevant factors for the jury." Sanchez, 961 F.2d at 1174. To prove conspiracy, the government must prove at least the same degree of criminal intent necessary for the underlying substantive offense. United States v. Osgood, 794 F.2d 1087, 1094 (5th Cir. 1986), cert. denied, 479 U.S. 994, 107 S. Ct. 596 (1986). To prove possession of a controlled

12

substance with intent to distribute, the government must prove beyond a reasonable doubt the defendant's possession of the illegal substance, knowledge, and intent to distribute. United States v. Freeze, 707 F.2d 132, 135 (5th Cir. 1983). The necessary knowledge and intent can be proved by circumstantial evidence. United States v. Mitchell, 876 F.2d 1178, 1181 (5th Cir. 1989). This Court has held that knowledge of the presence of a controlled substance may be inferred from the exercise of control over a vehicle in which the illegal substance is concealed. United States v. Diaz-Carreon, 915 F.2d 951, 954 (5th Cir. 1990). If a hidden compartment is involved, however, this Court requires "additional evidence indicating knowledge--circumstances evidencing a consciousness of guilt . . .," such as conflicting statements and an implausible account of events. See United States v. Moreno-Hinojosa, 804 F.2d 845, 847 (5th Cir. 1986).

Napoles and Guerra challenge the sufficiency of the evidence to convict them of the charges by pointing to the absence of a knowing agreement. They argue that there was no evidence that they brought the cocaine to New Orleans; that they traveled in the car in which the cocaine was transported; that they ever touched or saw the bags of cocaine found in the car; that they had any money with which to buy the cocaine, or any substantial money which would have come from the sale of such a great amount of cocaine or that they ever looked inside the bag that Guerra carried to the storage unit.

13

Napoles and Guerra claim that the fact that they were cooperative with the police is proof that they did not know that the drugs were present.  They allowed the police to search the locker and the yellow Cadillac and neither owned the Cadillac.  They point out that there is no definite tie between the cocaine found in Guerra's locker and the cocaine found in the Cadillac.

The evidence in this case is sufficient to prove all of the elements mentioned above and therefore supports an inference of agreement, knowledge and voluntary participation by these defendants to convict them of conspiracy.  The evidence includes a kilogram of cocaine worth over $32,000 concealed in a car driven from Miami to New Orleans; the defendants' access and personal connection to the car in which the drug was concealed; traces of cocaine on a scale found in a paper bag like the one defendant Guerra placed in the locker which she controlled; and the defendants' presence at the motel at the same time as one suspected of trafficking cocaine into New Orleans.

Possession of "a larger quantity of cocaine than an ordinary user would possess for personal consumption supports the finding that defendants intended to distribute the drug.  United States v. Pineda-Ortuno, 952 F.2d 98, 102 (5th Cir. 1992), cert. denied, ___U.S.___, 112 S. Ct. 1990, 118 L. Ed. 2d 587 (1992).

Moreover, the defendants clearly exhibited the characteristics of a "consciousness of guilt" because these defendants gave conflicting statements as to their knowledge of the yellow Cadillac.  Diaz-Carreon, 915 F.2d at 955.  When initially

14

questioned in the storage facility, these defendants denied any knowledge of the car. Guerra later admitted she knew the car was registered to Napoles' sister. Napoles' denial of knowledge of a vehicle owned by his sister that he was observed unlocking and entering is an inconsistent statement.

Further, "[t]his Court has acknowledged that a 'less-than-credible explanation' for a defendant's actions is 'part of the overall circumstantial evidence from which possession and knowledge may be inferred.'" Diaz-Carreon, 915 F.2d at 955. Neither Guerra nor Napoles offer a credible explanation as to where and how they met Rodriguez or why Guerra rented a room at the motel for Rodriguez, a total stranger. It also seems incredible that Napoles and Guerra would trust a total stranger to drive their car. This Court has recognized that an "implausible account of the events provides persuasive circumstantial evidence of the defendant's consciousness of guilt." Diaz-Carreon, 915 F.2d at 955.

Therefore, we hold that a rational trier of fact could determine that Napoles and Guerra had the requisite knowledge to find them guilty beyond a reasonable doubt of possession with intent to distribute.

IV.

WHETHER THE VOIR DIRE VIOLATED NAPOLES'
AND GUERRA'S DUE PROCESS RIGHTS.

Napoles and Guerra assert they were denied due process and the guarantee of an impartial jury as a result of the trial court's refusal to question potential jurors concerning the defendant's

15

Fifth Amendment privilege not to testify. Neither Napoles nor Guerra testified at trial.

In United States v. Ledee, 549 F.2d 990, 992 (5th Cir. 1977), cert denied, 434 U.S. 902, 98 S. Ct. 297, 54 L. Ed. 2d 188 (1977) this Court held that absent an abuse of the discretion, it would defer to the judgment of the district court as to the conduct and scope of voir dire. Such an abuse of discretion will be found when there is insufficient questioning to produce some basis for defense counsel to exercise a reasonably knowledgeable right of challenge. United States v. Sababu, 891 F.2d 1308, 1325 (7th Cir. 1989).

Defendants concede that the district court questioned the jurors as to their ability to be impartial and to follow the law as instructed at the end of the trial and instructed the jurors prior to their deliberations as to the Fifth Amendment privilege.

Defendants also concede (i) that the controlling law in this Circuit is that a trial court is not obligated to inquire as to whether the prospective jurors would accept any particular proposition of law; and (ii) that "the overall voir dire questions, coupled with instruction given by the trial court at the close of the case, adequately protected defendants . . . right to be tried by a fair and impartial jury." United States v. Miller, 758 F.2d 570 at 573 (11th Cir. 1985), cert denied, 474 U.S. 994, 106 S. Ct. 406, 88 L. Ed. 2d 357 (1985).

Nevertheless, defendants urge this Court to overturn its prior decision in Ledee and hold that inquiry into the jurors' views of specific provisions of law, such as the right not to testify, is

16

required during voir dire when requested by the defense as a matter of law. In support of their position the defendants cite a recent Supreme Court death-penalty case, Morgan v. Illinois, 112 S. Ct. 2222, 119 L. Ed. 2d 492 (1992).

In Morgan, the defendant was convicted and the death penalty was imposed. On appeal the defendant challenged his sentence on the grounds that the voir dire was constitutionally inadequate because the trial court refused the defense counsel's request that the court ask jurors that if they found the defendant guilty, would they automatically vote to impose the death penalty no matter what the facts were? Id. at 2226.

The court recognized that voir dire is conducted under the supervision of the trial court and "a great deal must, of necessity, be left to its sound discretion." Id.

The court concluded that the trial court's discretion in the conduct of voir dire and the restriction upon inquiries at the request of counsel were "subject to the essential demands of fairness."

The court found that the "general fairness" and "follow the law" questions asked by the trial judge were not sufficient to guarantee the defendant the right to the intelligent use of his challenges for cause and peremptory challenges.

However, the court restricted its decision to reversing only the defendant's death sentence and noted that its decision "had no bearing on the validity of petitioner's conviction." Id. at 2235 n. 11.

Moreover, there is no language in the opinion that indicates that the court was intending to overrule the Fifth Circuits's decision as to the discretion allowed trial courts in non-capitol cases. The <u>Morgan</u> decision does not require this Court to reexamine its earlier precedents in non-capital cases.

V.

<u>CONCLUSION</u>

We REVERSE Rodriguez's conviction and REMAND the cause to the trial court for a new trial. We AFFIRM the judgment of conviction and the sentences as to Napoles and Guerra.