IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

May 8, 2008

Charles R. Fulbruge III
Clerk

No. 05-10247

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

RONALD GENE HARPER; JIMMIE CLYDE COLLINS,

Defendants–Appellants.

Appeal from the United States District Court
for the Northern District of Texas

Before KING, DeMOSS, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

We granted rehearing and withdrew our prior opinion, which had been issued January 17, 2008. We substitute the following opinion.

Ronald Gene Harper and Jimmie Clyde Collins were tried jointly and convicted by a jury of conspiracy, controlled substance offenses, and weapons offenses. Neither testified at trial. In this direct criminal appeal, Harper appeals his conviction and sentence, claiming that the district court (1) violated Harper's Sixth Amendment right to confrontation by admitting part of Collins's confession, (2) erred in excluding the conviction records of a witness called by the Government, and (3) abused its discretion by refusing to ask requested voir dire questions of the venire panel. Collins appeals his sentence, claiming (1) a

conviction in this case cannot be used as a prior conviction for purposes of calculating the advisory sentencing guidelines, and (2) his sentence is unreasonable. We affirm.

I

Demea Garrett, a confidential informant working for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), approached the house in which Ronald Gene Harper and Jimmie Clyde Collins both lived and spoke to Harper about purchasing crack cocaine. Harper told Garrett to return in thirty minutes. Garrett did not return thirty minutes later, but did return approximately a week later, on June 21, 2004, and he purchased 3.52 grams of cocaine base from Collins. Harper was in the room where the transaction occurred but did not participate in the sale.

Four days later, on June 25, 2004, ATF and state officers searched the house pursuant to a warrant and saw a surveillance camera on the front porch that was later determined to be wired to a monitor in the living room. As officers entered the house, Harper and Collins attempted to run out of the back door but were apprehended. The authorities found loaded firearms in virtually every room. Four hand guns were hidden in the living room sofa, where crack cocaine was also found. Cocaine was also found in a Pyrex bowl in a microwave oven in the kitchen. A total of twenty-eight firearms and over eleven grams of cocaine were confiscated. Some of the cocaine was packaged for distribution in plastic baggies. The officers additionally found digital scales and empty plastic baggies in the house.

Collins and Harper were present when ATF conducted the search, and they were arrested. After receiving Miranda warnings and while in the driveway of the house, Harper told an ATF agent that he lived in the "middle room." He denied knowledge of the drugs but admitted that his fingerprints would be on the guns because he moved them "around the house." Collins told

the same ATF agent that "everything in the house was his," referring to the guns and a small quantity of marijuana, but he said he was unaware of the crack cocaine in the microwave and stated that it "was probably his dinner."

ATF agents returned to the house a month later on July 26, 2004, to execute federal arrest warrants for Harper and Collins. Collins answered the door and was arrested. Harper was found sitting on the living room sofa and was also arrested. Collins consented to a search, during which agents again found video surveillance equipment consisting of a camera on the front porch connected to a monitor in living room, two additional firearms—one in the sofa and another in a bedroom, and crack cocaine and heroin in the sofa. After Collins received Miranda warnings, he told an ATF agent that all of the drugs and firearms in the house were his. He admitted that he traded cash and crack cocaine for one of the guns.

Harper and Collins (along with a third defendant not involved in this appeal) were indicted in a ten-count Superceding Indictment. Harper was named in five counts arising from only the June 25, 2004, search: conspiracy to possess five grams or more of cocaine base with intent to distribute, possession of five grams or more of cocaine base with intent to distribute, using and maintaining premises to manufacture and distribute a controlled substance, possession of a firearm in furtherance of a drug trafficking crime, and possession of a firearm by a convicted felon.

Collins was named in six counts arising from both the June 25, 2004 and July 26, 2004 searches, including conspiracy to possess five grams or more of cocaine base with intent to distribute (June 25), possession of five grams or more of cocaine base with intent to distribute (June 25), using and maintaining premises to manufacture and distribute a controlled substance (June 25), possession of a firearm in furtherance of a drug trafficking crime (June 25),

possession of a controlled substance with intent to distribute (July 26), and possession of a firearm in furtherance of a drug trafficking crime (July 26).

A jury convicted Harper and Collins of all charges in a joint trial. Collins did not testify at trial, but an ATF officer testified as to Collins's admissions during both searches, over Harper's Sixth Amendment objections. The district court instructed the jury not to consider Collins's statements as evidence against Harper.

At sentencing, the district court adopted the Presentence Investigation Report's (PSR's) calculation of the advisory guidelines sentencing ranges and the PSR's sentencing recommendations. The district court concluded that Collins's conviction for a June 25 violation of 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug trafficking crime was a "prior" conviction that preceded the conviction in the same trial for a July 26 violation of 18 U.S.C. § 924(c) for possession of a firearm in furtherance of a drug trafficking crime. These two convictions carried statutorily mandated, consecutive prison terms of 60 and 300 months, respectively. The advisory sentencing range for Collins's other convictions was 63 to 79 months. However, the district court sentenced Collins to a 10-month prison term for those convictions to be followed consecutively by the 60 and 300 months' sentences, for a total of 370 months of imprisonment. The court also imposed supervised release and a $600 special assessment.

Harper's violation of 18 U.S.C. § 924(c) resulted in a mandatory, consecutive 60-month term of imprisonment. The advisory sentencing guidelines range for each of his other convictions was 78 to 97 months of imprisonment. The district court sentenced him to 78 months to be followed by the 60-month consecutive term, for a total sentence of 138 months of imprisonment, in addition to supervised release and a $500 special assessment.

## II

We first consider the issues that Harper raises in this appeal. He contends that his Sixth Amendment right to confront witnesses testifying against him was violated when the district court admitted testifying officers' recollections of Collins's post-arrest statements. Harper relies on the Supreme Court's decision in Crawford v. Washington.[1] Because Harper properly preserved his Sixth Amendment challenge by objecting to the testimony recounting Collins's statements, we review the issue de novo,[2] and any error is subject to harmless error analysis.[3]

Harper challenges the admission of ATF agent Blake Gordon's testimony that on July 26, 2004:

> Mr. Collins stated that the SIG-Sauer pistol that was found, that he traded it for $200 in cash and $70 worth of crack cocaine to a relative of his. In addition he stated that he sold crack cocaine in quantities known as 50s.

Harper also challenges ATF agent Chris Beach's testimony that on June 25, 2004:

> Mr. Collins told me that he lived at the residence. I explained to him that at the time firearms and narcotics were being found inside the residence . . . . He told me everything in the house was his and specifically that the firearms that he had either purchased them—or he had obtained them either by purchasing them or trading for them. He explained that if there were any narcotics in the house that he smoked marijuana and we'd probably find marijuana inside the house.

---

[1] 541 U.S. 36 (2004).

[2] See United States v. Jimenez, 464 F.3d 555, 558 (5th Cir. 2006).

[3] See Harrington v. California, 395 U.S. 250, 253 (1969) (holding that the Sixth Amendment Confrontation Clause violation in that case was harmless beyond a reasonable doubt and therefore did not require the conviction to be overturned); United States v. Ramos-Cardenas, __ F.3d __, __ (5th Cir. 2008) (noting that alleged violations of the Confrontation Clause of the Sixth Amendment are subject to harmless error analysis).

I asked him where he stayed inside the residence. He said he usually sleeps in the living room. I asked him about the suspected narcotics—suspected crack cocaine that we found in the microwave. He said he was unaware of that and it was probably his dinner.

"The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant 'to be confronted with the witnesses against him.'"[4] This means that "[w]here testimonial evidence is at issue . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination."[5] The Supreme Court explained in Crawford that "the Confrontation Clause . . . applies to 'witnesses' against the accused—in other words, those who 'bear testimony,'"[6] and that "even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class."[7] The Court reiterated in Crawford that although it was "leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial' . . . [w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."[8] The testifying officers' account at trial as to what Collins said while in custody was testimonial.[9] Although Harper could cross-examine the officers who related

---

[4] Cruz v. New York, 481 U.S. 186, 189 (1987) (quoting U.S. CONST. amend. VI).

[5] Crawford, 541 U.S. at 68.

[6] Id. at 51.

[7] Id. at 53.

[8] Id. at 68.

[9] See Bruton v. United States, 391 U.S. 123, 135-36 (1968) (holding that admission of a postal inspector's testimony about an oral confession by a defendant's co-defendant violated the defendant's Sixth Amendment right to cross-examine his co-defendant, who was unavailable because the co-defendant asserted his right not to testify).

6

Collins's alleged statements to the jury, Harper could not cross-examine Collins because Collins exercised his Fifth Amendment right not to incriminate himself.

The question remains, however, whether Collins's statements were "against"[10] Harper. The Crawford decision says that "'[t]estimony' . . . is typically . . . 'made for the purpose of establishing or proving some fact.'"[11] The Supreme Court has similarly said, "Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt."[12] The Court has also explained that "[o]rdinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."[13] This flows from "the almost invariable assumption of the law that jurors follow their instructions."[14] The Supreme Court has "recognized a narrow exception to this principle: We held that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant."[15]

Harper contends that in spite of the district court's instructions before the challenged testimony was admitted into evidence that the jury could consider it

---

[10] U.S. CONST. amend. VI.

[11] Crawford, 541 U.S. at 51 (quoting 2 N. Webster, An American Dictionary of the English Language (1828)).

[12] Cruz v. New York, 481 U.S. 186, 190 (1987).

[13] Richardson v. Marsh, 481 U.S. 200, 206 (1987); see also United States v. Ramos-Cardenas, __ F.3d __, __ (5th Cir. 2008) (quoting Richardson).

[14] Richardson, 481 U.S. at 206.

[15] Id. at 207.

only against Collins and the district court's similar instructions to the jury prior to deliberations, the statements attributed to Collins were in fact against Harper. Harper argues Collins's alleged admissions and statements incriminated Harper and corroborated the testimony of a government informant, the only witness who claimed to have seen Harper present when a sale of illegal drugs occurred.

In Crawford a wife's tape-recorded statement to police describing an altercation in which her husband stabbed a man was introduced as evidence directly against her husband during his trial for assault.[16] The wife was not a defendant but refused to testify based on a state-law marital privilege.[17] The Supreme Court held that admission of the wife's statement violated the Confrontation Clause. The Court did not expressly overrule a line of its decisions[18] having their genesis in Bruton v. United States.[19] Those cases have held that a non-testifying witness's out-of-court statement, including a co-defendant's confession, that facially incriminates a defendant violates the defendant's Sixth Amendment right to confrontation, even when the jury is instructed not to consider the prior statements as evidence against the defendant.[20] Out-of-court statements of a non-testifying witness that only

---

[16] Crawford, 541 U.S. at 38.

[17] Id. at 40.

[18] See Gray v. Maryland, 523 U.S. 185 (1998); Richardson v. Marsh, 481 U.S. 200 (1987); Cruz v. New York, 481 U.S. 186 (1987); Harrington v. California, 395 U.S. 250 (1969).

[19] 391 U.S. 123 (1968).

[20] See Gray, 523 U.S. at 192 (confirming "that certain 'powerfully incriminating extrajudicial statements of a codefendant'—those naming another defendant—considered as a class, are so prejudicial that limiting instructions cannot work"); Richardson, 481 U.S. at 207 (observing "that a defendant is deprived of his Sixth Amendment right of confrontation when the facially incriminating confession of a nontestifying codefendant is introduced at their joint trial, even if the jury is instructed to consider the confession only against the codefendant"); Cruz, 481 U.S. at 189-90 (same); Harrington, 395 U.S. at 252 (same); Bruton, 391 U.S. at 137

inferentially incriminate a defendant when linked to other evidence introduced at trial do not violate the Sixth Amendment because an instruction not to consider such a statement will be considered effective to remove it from the jury's consideration.[21] But statements that obviously incriminate a defendant, involve an inference that a jury could make immediately without hearing other evidence, and that a judge could easily predict prior to trial, before hearing any evidence, would be barred under the rationale of Bruton, do violate the Confrontation clause.[22]

The Supreme Court has said that Bruton is an exception to the general rule that instructions remove testimony or other evidence from the jury's consideration.[23] Two subsequent decisions, Cruz v. New York and Richardson v. Marsh, issued the same day by a divided court,[24] clarified the reach of Bruton and accordingly, the boundaries of this exception. The question in Cruz was whether the exception in Bruton applied and prohibited the admission of a co-defendant's confession, even with a limiting instruction, when the defendant's own confession was admitted against him.[25] The Court held that admission of the co-defendant's confession was a Confrontation Clause violation in this

---

(same).

[21] See Richardson, 481 U.S. at 208-09.

[22] See Gray, 523 U.S. at 196-97.

[23] Richardson, 481 U.S. at 207 ("In Bruton, however, we recognized a narrow exception to this principle.").

[24] Richardson v. Marsh, 481 U.S. 200 (1987) (writing for the Court was SCALIA, J., joined by REHNQUIST, C.J., and WHITE, BLACKMUN, POWELL and O'CONNOR, JJ.; the dissent by STEVENS, J., was joined by BRENNAN and MARSHALL, JJ.); Cruz v. New York, 481 U.S. 186 (1987) (writing for the Court was SCALIA, J., joined by BRENNAN, MARSHALL, BLACKMUN, and STEVENS, JJ.; the dissent by WHITE, J., was joined by REHNQUIST, C.J., and POWELL and O'CONNOR, JJ.);

[25] Cruz, 481 U.S. at 187-88.

circumstance, as well,[26] because the same "factors the Court has deemed relevant in this area: the likelihood that the instruction will be disregarded, . . . the probability that such disregard will have a devastating effect, . . . and the determinability of these facts in advance of trial" were equally applicable.[27] The Court reasoned, "[i]t seems to us illogical, and therefore contrary to common sense and good judgment, to believe that codefendant confessions are less likely to be taken into account by the jury the more they are corroborated by the defendant's own admissions; or that they are less likely to be harmful when they confirm the validity of the defendant's alleged confession."[28] The Court also explained that its rule in this area was categorical, and the "'devastating' practical effect" "should [not] be assessed on a case-by-case basis."[29] The Court nevertheless observed that "[o]f course, the defendant's confession . . . may be considered on appeal in assessing whether any Confrontation Clause violation was harmless."[30]

In Richardson v. Marsh, the question was whether a Confrontation Clause violation occurred when a co-defendant's confession was redacted and did not refer to the defendant, "but the defendant is nonetheless linked to the confession by evidence properly admitted against him."[31] Williams, a co-defendant,

---

[26] Id. at 193 ("We hold that, where a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant . . . the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him.").

[27] Id.

[28] Id.

[29] Id. at 191.

[30] Id. at 193-94.

[31] 481 U.S. 200, 202 (1987).

confessed that he, Marsh and a third person participated in two murders.[32] The confession was redacted to remove any indication that anyone other than Williams and the third person had taken part in the crime.[33] The confession recounted that Williams and the third person were in an automobile traveling to the home where they planned to commit a robbery and discussed that they "would have to take them out after the robbery," meaning kill the witnesses.[34] When this confession was admitted, the jury was instructed not to use it against Marsh in any way.[35] The defendant Marsh subsequently took the stand in her own defense and testified that she was in the back seat of the automobile as Williams and the third person drove to the scene of the crime, she could hear them talking, but that she could not hear what they were saying because the radio was on and the speaker was near her ear.[36] She denied knowing that Williams or the third person were armed and denied hearing any conversation about robbing or harming anyone.[37] But Marsh's testimony placed her in the car when Williams's confession said that he and the third person discussed their perceived need to commit the murders. A jury convicted Marsh of two counts of felony murder.[38]

The Supreme Court pointedly assumed that Marsh would have been harmed by Williams's confession if the jury disobeyed the instructions not to

---

[32] Id. at 203.

[33] Id.

[34] Id. n.1.

[35] Id. at 204.

[36] Id.

[37] Id.

[38] Id. at 205.

consider the confession against Marsh.[39]  The question, therefore, was not whether Marsh was harmed by the inferences the jury could draw against her from Williams's confession, but "whether the trial court could properly assume that the jury did not use it against [Marsh]."[40]  The Supreme Court held that the admission of the confession with the limiting instruction did not violate the Confrontation Clause under these circumstances.[41]

The subsequent decision in Gray explains that Richardson v. Marsh "must depend in significant part upon the kind of, not the simple fact of, inference."[42]  In Gray, a confession had been redacted to substitute the defendant's name with a blank space or the word "deleted."[43]  The Court held that the redacted confession "obviously refer[ed] directly to someone, often obviously the defendant, and which involve[d] inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial."[44]  The Court also concluded that one "policy reason[]"[45] articulated in Richardson was not implicated.  That consideration was the "fear[]" that "confessions that incriminated 'by connection' too often would provoke mistrials, or would

---

[39] Id. at 208 n.3 ("The dissent is mistaken in believing we 'assum[e] that [Williams'] confession did not incriminate respondent.' . . .  To the contrary, the very premise of our discussion is that respondent would have been harmed by Williams' confession if the jury had disobeyed its instruction.").

[40] Id.  ("Our disagreement [with the dissent] pertains not to whether the confession incriminated respondent, but to whether the trial court could properly assume that the jury did not use it against her.").

[41] Id. at 211.

[42] Gray v. Maryland, 523 U.S. 185, 196 (1998) (citing Richardson v. Marsh, 481 U.S. 200 (1987)).

[43] Id. at 188.

[44] Id. at 196.

[45] Id.

12

unnecessarily lead prosecutors to abandon the confession or joint trial, because neither the prosecutors nor the judge could easily predict, until after the introduction of all the evidence, whether or not Bruton had barred use of the confession."[46]  This concern was not present in Gray because the use of blanks or the word "delete" in a confession "is easily identified prior to trial and does not depend, in any special way, upon other evidence introduced in the case."[47]

As we have said,[48] the Supreme Court's opinion in Crawford[49] did not directly consider whether limiting instructions remain effective to forestall a Confrontation Clause violation in circumstances such as those presented in Richardson.[50]  The Crawford decision does cite Bruton for the proposition that "[w]e similarly excluded accomplice confessions where the defendant had no opportunity to cross-examine,"[51] and Crawford cites Cruz's abrogation of Parker v. Randolph[52] in the course of discussing interlocking confessions and stating, "Our only precedent on interlocking confessions had addressed the entirely different question whether a limiting instruction cured prejudice to codefendants from admitting a defendant's own confession against him in a joint trial."[53] Recall that Cruz holds that a limiting instruction does not cure prejudice even

---

[46] Id. at 197.

[47] Id.

[48] See supra text accompanying notes 18-19; see also United States v. Ramos-Cardenas, __ F.3d __, __ (5th Cir. 2008) ("Crawford . . . did not speak directly to the issue before us," which was whether post-arrest statements by non-testifying codefendants violated another defendant's Sixth Amendment right to confront witnesses against him).

[49] Crawford v. Washington, 541 U.S. 36 (2004).

[50] Richardson v. Marsh, 481 U.S. 200 (1987).

[51] 541 U.S. at 57.

[52] 442 U.S. 62, 69-76 (1979).

[53] Crawford, 541 U.S. at 59.

when a defendant's own confession is admitted against him. We further note that the Supreme Court has described the "rule that juries are presumed to follow their instructions" as "a pragmatic one," even when determining if the Sixth Amendment's Confrontation Clause was violated.[54] In Richardson, Cruz, and Gray, the Court did not examine the historical treatment of a non-testifying co-defendant's statement or confession coupled with a limiting instruction that the prior out-of-court statement is not to be used against a defendant. By contrast, the basis of the Court's decision in Crawford was its examination of the history of the right of confrontation and what the Framers understood that right to encompass.[55] Because the Supreme Court has thus far taken a "pragmatic" approach to resolving whether jury instructions preclude a Sixth Amendment violation in various categories of cases, and because Richardson has not been expressly overruled,[56] we will apply Richardson and its pragmatic approach, as well as the teachings in Bruton, Cruz, and Gray.

Collins's statements did not directly or obviously implicate Harper until other evidence, such as the fact that Harper lived in the same house as Collins, was introduced. Collins's admission that he sold crack cocaine in quantities known as 50's does not facially incriminate Harper nor does it refer to the existence of Harper or anyone else. This statement is well within the category of statements identified in Richardson that do not violate the Sixth Amendment.

Collins's statement that he was unaware of the cocaine found in the microwave and it "was probably his [Collins's] dinner" is a closer question.

---

[54] Richardson v. Marsh, 481 U.S. 200, 211 (1987).

[55] Crawford, 541 U.S. at 43 ("We must therefore turn to the historical background of the Clause to understand its meaning."); see also id. at 43-68.

[56] See Rodriguez de Quijas v. Shearson/Am. Express, Inc., 490 U.S. 477, 484 (1989) ("'If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Although the statement did not on its face obviously or directly incriminate Collins, it did obliquely refer to the existence of someone else[57] since if Collins was unaware the cocaine was in the microwave, either Collins forgot he had put it there or someone had done, and in the latter case, a likely candidate would be Harper, who also lived in the house. Nevertheless, this statement is more analogous to the category of confessions that Richardson says do not constitute a Confrontation Clause violation than it is to the category of redacted confessions more directly incriminating a defendant that Gray holds do violate the Confrontation Clause. The incrimination from Collins's statements is inferential and "the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first place, so that there is no incrimination to forget."[58] The "practical effects" of concern in Richardson also arise if the trial court cannot properly assume that the jury did not use Collins's statements against Harper.

Accordingly, we conclude that the testimony as to what Collins said after he was arrested did not violate Harper's Sixth Amendment right to confront a witness against him. Although it would have been the better practice to have insured that Collins's statement regarding the cocaine in the microwave was not placed before the jury, the district court could properly assume that the jury, as instructed, did not use Collins's statements against Harper.[59]

---

[57] Cf. Richardson, 481 U.S. at 211 (holding that the confession did not violate the Confrontation Clause because it was "redacted to eliminate not only the defendant's name, but any reference to his or her existence.").

[58] Id. at 208.

[59] Id. at 208 n.3 (explaining that the inquiry is "whether the trial court could properly assume that the jury did not use it [a co-defendant's confession] against [the respondent].").

III

Harper contends that the district court erred in excluding the written conviction records of a state witness on the basis that they were "repetitious" of the witness's admissions of the convictions during testimony. We review a district court's decision to admit or exclude evidence for abuse of discretion.[60] Even if the district court abused its discretion, this court will not overturn a conviction unless the defendant was prejudiced by the error.[61]

Harper offered certified copies of court records showing five separate convictions of Garrett, the confidential informant. The court excluded the exhibits on the basis that they were "repetitious" and a "waste of time" because Garrett testified and was cross-examined about his prior convictions.

Two of the exhibits that Harper sought to admit were records of Garrett's convictions for criminal mischief and attempted possession of a controlled substance after violating his deferred adjudication probation by committing theft-by-check. On direct examination, however, Garrett admitted the offenses. Additionally, Collins's attorney cross-examined Garrett about the convictions and why deferred adjudication probation was revoked. Given that Garrett admitted the prior convictions and was available for cross-examination, the district court did not abuse its discretion in excluding the exhibits.[62]

Harper next argues that documentary evidence of Garrett's conviction for the misdemeanor offense of assault by bodily injury involving family violence is admissible to show Garrett's bias, because it showed that he had a pending charge against him at the time of Harper's alleged drug transaction and

---

[60] United States v. Cantu, 167 F.3d 198, 203 (5th Cir. 1999).

[61] United States v. Coleman, 78 F.3d 154, 156 (5th Cir. 1996).

[62] See United States v. Sockwell, 699 F.2d 213, 217 (5th Cir. 1983) (no error to exclude superfluous documentary evidence where defendant's testimony established the matter); FED. R. EVID. 403.

therefore that he would be motivated to "curry favor with the government." Garrett testified on direct examination that he was convicted in 2004 for the family violence offense, but he indicated on cross-examination that he was not certain of when in 2004 he was actually convicted. Because Garrett also testified that he began working as a confidential informant in either March or April of 2004,[63] his testimony could indicate that his conviction for family violence occurred prior to when he began working as a confidential informant. The arrest record showing that his misdemeanor conviction for family violence occurred on June 30, 2004, nine days after Garrett's June 21 drug buy in this case, could therefore not be dismissed as redundant or duplicative, and the district court abused its discretion in doing so.

The court likewise abused its discretion in refusing to admit the documentary evidence of Garrett's convictions for theft-by-check. Rule 609(a)(2) provides that "evidence that a witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness."[64] The two theft-by-check convictions fall under Rule 609(a)(2) because they have as an element "an act of dishonesty or false statement by the witness." Crimes qualifying for admission under Rule 609(a)(2) are not subject to Rule 403 balancing and must be admitted.[65]

Additionally, Garrett did not clearly admit to the theft-by-check convictions, but rather only indicated that he was "possibly" convicted for them. Garrett said that his deferred adjudication probation for the criminal mischief

---

[63] Garrett testified at the October 26, 2004 trial that he had been working as a confidential informant for six or seven months.

[64] FED R. EVID. 609(a)(2).

[65] See United States v. Toney, 615 F.2d 277, 279-80 (5th Cir. 1980).

and attempted possession charges had been revoked for failure to report to his probation officer, drug use, or both. The documentary evidence shows that the revocation was due to the theft-by-check offenses. Such evidence also impugns Garrett's credibility. Given Rule 609(a)(2)'s mandate, and the fact that Garrett did not admit to the two convictions (and thus the records would not have been cumulative of the testimony), the district court abused its discretion by not admitting the documentary evidence of Garrett's theft-by-check convictions.

We must determine whether the error was harmless.[66] Harmless error is "[a]ny error, defect, irregularity, or variance that does not affect substantial rights."[67] It arises when the mistake fails to prejudice the defendant because it has not "affected the outcome of the district court proceedings."[68]

Harper claims that he was prejudiced because the exhibits "would have been very damaging to the credibility of Garrett" and the Government's case against Harper "depended heavily—perhaps entirely—upon the jury's assessment of Garrett's credibility." But the testimony concerning Garrett's three prior convictions placed his credibility squarely before the jury, and Garrett's testimony established that he had a history of criminal conduct, and that he was a paid informant working for the Government. Although there is a plausible argument that the two theft-by-check convictions speak uniquely to Garrett's ability to testify honestly, Harper does not argue that those two convictions would have impeached Garrett's credibility in a manner unique from the other convictions. Because the district court's error did not affect the outcome of the district court proceedings, the error was harmless and reversal is not required.

---

[66] See United States v. Bishop, 264 F.3d 535, 546 (5th Cir. 2001).

[67] FED. R. CRIM. P. 52(a).

[68] See United States v. Olano, 507 U.S. 725, 734 (1993).

IV

Harper argues that the district court erred when it refused to ask the jury panel three proposed questions to determine each individual's ability to follow anticipated jury instructions about the law of conspiracy and aiding and abetting. We review a district court's refusal to question potential jurors regarding a particular provision of law for abuse of discretion.[69] "The trial court has broad discretion to determine who will question potential jurors and what questions will be asked."[70] "We grant broad discretion to the trial judge in making determinations of impartiality and will not interfere with such decisions absent a clear abuse of discretion."[71]

One proposed question concerned Harper's defense theory and included a statement that a defendant's "mere presence" does not establish proof of conspiracy. The other two questions outlined the elements the government would have to prove for conspiracy and aiding and abetting and asked the jury whether they would be able to follow the law and require the government to prove the elements beyond a reasonable doubt. The district court instead asked the potential jurors a general question about their ability to follow the law and the instructions of the court:

> Is there anyone on the jury panel who, for religious reasons or otherwise, could not follow the legal instructions of the law as the Court gives it to you without questioning the wisdom or correctness of that law? Because the jury is obligated to do that. Is there anyone who has a hesitancy to say that you would strictly follow the law as the Court instructs you the law is and instructs you to follow?

---

[69] United States v. Rodriguez, 993 F.2d 1170, 1176 (5th Cir. 1993).

[70] United States v. Rasco, 123 F.3d 222, 231 (5th Cir. 1997).

[71] United States v. Greer, 968 F.2d 433, 435 (5th Cir. 1992) (en banc) (internal quotation omitted).

Harper asserts that his proposed questions were designed to detect the bias of potential jurors against specific provisions of law, and in particular, detect whether any juror held the opinion that mere association with drug traffickers would be sufficient to establish guilt of drug trafficking. He argues that the district court's refusal to ask specific questions prevented him from discovering any such juror bias and thus was an abuse of discretion.

"[A] trial court is not obligated to inquire as to whether the prospective jurors would accept any particular proposition of law."[72] "The test for determining whether a court has adequately questioned prospective jurors regarding bias is whether 'the means employed to test impartiality have created a reasonable assurance that prejudice would be discovered if present.'"[73] "A court abuses its discretion when the scope of voir dire is inadequate to discover bias and deprives the defendant of an opportunity to make reasonable use of peremptory challenges."[74]

The district court did not abuse its discretion when it declined to ask questions about potential jurors' ability to follow specific provisions of law and instead asked generally whether the jury would follow the law as instructed. In United States v. Rodriguez, this court considered whether the district court abused its discretion when it refused to ask a question concerning the defendant's Fifth Amendment right not to testify.[75] We declared that a district court had no obligation to ask the jury about specific provisions of law and concluded that there was no abuse of discretion where the district court "questioned the jurors as to their ability to be impartial and to follow the law as

---

[72] Rodriguez, 993 F.2d at 1176.

[73] Greer, 968 F.2d at 435 (quoting United States v. Saimiento-Rozo, 676 F.2d 146, 148 (5th Cir. 1982)).

[74] Id. (citing United States v. Brown, 799 F.2d 134, 136 (4th Cir. 1986)).

[75] Rodriguez, 993 F.2d at 1176.

instructed at the end of the trial and instructed the jurors prior to their deliberations as to the Fifth Amendment privilege."[76]

In this case, the district court asked the potential jurors about their ability to follow legal instructions and admonished the jury that it was "obligated to do that." After the jury was sworn and before evidence was presented, the district court again instructed the jury that "[y]ou will then have to apply those facts to the law as the Court will give it to you. You must follow that law whether you agree with it or not." At the conclusion of the case the district court instructed the jury:

> in reaching your decision as to the facts, it is your sworn duty to follow all of the rules of law as I explain them to you. You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences.

The district court did not abuse its discretion in refusing to ask Harper's proposed questions.[77]

V

We now address the arguments raised by Collins, who first contends that the district court erred in using a conviction in this case as a "prior conviction" for sentencing purposes. The jury convicted Collins on Counts Four and Ten, which were both charges for possession of a weapon during a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). Count Four related to possession of a weapon on June 25, 2004, and Count Ten related to possession of a weapon on July 26, 2004. During sentencing, over Collins's objection to the PSR, the

---

[76] Id.

[77] See id.

district court treated Count Four as a prior conviction and enhanced the sentence for Count Ten to twenty-five years (to be served consecutively to the five years for Count Four).

Collins argues that treating his conviction on Count Ten as a "second or subsequent conviction" violated his Sixth Amendment right to trial by jury because the Count Ten conviction was in reality a "simultaneous conviction." He also argues that whether a conviction is a "second or subsequent" conviction is a fact for the jury to determine beyond a reasonable doubt. Finally, he argues that the "prior conviction" enhancement violates United States v. Booker.[78]

Collins acknowledges that his argument is foreclosed by Deal v. United States, in which the Supreme Court held that when a defendant is convicted of multiple counts in violation of § 924(c)(1) in a single proceeding, the convictions on all counts after the first one may be treated as "second or subsequent convictions."[79] The Court rejected the argument that to be treated as a "prior conviction," the conviction must be a final judgment from a prior proceeding.[80] Deal remains intact after Booker.[81]

VI

Collins asserts that the district court erred by imposing an unreasonable sentence. Collins was sentenced to 370 months for his conviction of the six counts charged. Collins argues that his thirty-year sentence is unreasonable because it is inconsistent with the applicable advisory Guidelines' range and is

---

[78] 543 U.S. 220 (2005).

[79] 508 U.S. 129,132-33 (1993).

[80] Id. at 132.

[81] See United States v. Thompson, 454 F.3d 459, 467 (5th Cir.), cert. denied, 127 S.Ct. 602 (U.S. Nov. 13, 2006).

greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a). He argues that several mitigating factors justify a lower sentence: his young age, that he sought drug rehabilitation in prison, that this was his first brush with the law, and that the sentence amounts to a life sentence.

Collins's 370-month sentence is an aggregate sentence based on his conviction on six counts. He was sentenced to ten months imprisonment on each of Counts One, Two, Three, and Nine, to be served concurrently; 60 months imprisonment on Count Four; and 300 months imprisonment on Count Ten. The court ordered that the 10-month, 60-month, and 300-month sentences be served consecutive to one another. Both the 60-month and 300-month sentences were statutory minimums,[82] and the district court could "'impose a sentence of imprisonment below a statutory minimum . . . only if: (1) the Government [so moves] pursuant to 18 U.S.C. § 3553(e)[,] asserting the defendant's substantial assistance to the Government; or (2) the defendant meets the "safety valve" criteria set forth in 18 U.S.C. § 3553(f).' Otherwise, post-Booker sentencing courts lack discretion to depart below relevant statutory minimums."[83] In this case, the government did not move for a lower sentence and Collins does not raise an argument under § 3553(f). The district court could therefore not depart below the sentences it actually imposed for Counts Four and Ten.

Accordingly, the district court only had discretion with regard to the 10-month sentence imposed for Counts Ten, Two, Three and Nine. The applicable

---

[82] Section 924(c) provides: "no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed for the . . . drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § 924(c)(1)(D)(ii). Section 924(c) further provides that the term of imprisonment for a violation of the statute is five years for the first offense and twenty-five years for second or subsequent offense. Id. § 924(c)(1)(A)(i), (C)(i).

[83] United States v. Krumnow, 476 F.3d 294, 297 (5th Cir. 2007) (quoting United States v. Phillips, 382 F.3d 489, 499 (5th Cir. 2004)) (alterations and emphasis in original).

Guidelines' range for those counts is 63-79 months, and Collins makes no sufficient argument for why the court's substantially lower sentence was unreasonable.

\* \* \* \* \* \*

For the foregoing reasons, we AFFIRM the convictions.